UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

G‍ERALD W‍ATROBSKI,

    Plaintiff,

v.

FCA US, LLC,

    Defendant.
_____/

Case No. 16-cv-11632

U‍NITED S‍TATES D‍ISTRICT C‍OURT J‍UDGE
G‍ERSHWIN A. D‍RAIN

U‍NITED S‍TATES M‍AGISTRATE J‍UDGE
M‍ONA K. M‍AJZOUB

### O‍PINION AND O‍RDER G‍RANTING D‍EFENDANT'S M‍OTION FOR S‍UMMARY J‍UDGMENT [46]

**I.    Introduction**

Plaintiff Gerard Watrobski initiated this action on May 5, 2016, asserting that the Defendant, FCA US, LLC, discriminated against him in contravention of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621. *See* Dkt. No. 1.

The Defendant moved for summary judgment on April 3, 2017. Dkt. No. 46. The Plaintiff responded to that motion, and the Defendant filed a reply brief in support. *See* Dkt. Nos. 51, 52, 54. Then, on September 14, 2017, United States Magistrate Judge Mona K. Majzoub ordered additional discovery in deciding motions to compel. *See* Dkt. No. 60. Accordingly, this Court amended the Scheduling Order and permitted the Plaintiff to file a supplemental response to the

Defendant's Motion for Summary Judgment. *See* Dkt. Nos. 61, 66. The Court also allowed the Defendant to file a supplemental reply brief in support of the summary judgment motion. *See* Dkt. Nos. 61, 69.

Presently before the Court is the Defendant's Motion for Summary Judgment [46]. The motion is fully briefed. The Court will decide the motion without a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons detailed below, the Court will GRANT the Defendant's Motion for Summary Judgment [46]. The Court holds that as a matter of law the Plaintiff cannot make a prima facie case of age discrimination, demonstrate pretext for the Defendant's justification for terminating his employment, or both.

**II. Background**

On April 1, 1977, Plaintiff joined FCA US, LLC to work in its Information Intellectual Properties Department. Dkt. No. 1, p. 4 (Pg. ID 4). He remained in that department until FCA terminated his employment on July 1, 2015. *Id.* At the time of his firing, Plaintiff was sixty-two years old. Dkt. No. 51, p. 4 (Pg. ID 541).

    1.    Direct Evidence of Discrimination

Plaintiff claims to present both direct and circumstantial evidence of age discrimination. As to the former, he offers comments made by FCA CEO Sergio Marchionne on the CBS show 60 minutes. *Id.* at p. 9 (Pg. ID 546). Specifically, Steve Kroft of 60 minutes says that "[t]o change the management structure,

[Marchionne] combed through the company and found 26 young leaders who would report directly to him." Dkt. No. 46-10, p. 6 (Pg. ID 520). Marchionne replies that these leaders were not on a management "fast track," and instead many "were buried inside an incredibly hierarchical organization." *Id.*

Plaintiff similarly cites former FCA Chief Information Officer Scott Sandschafer's comments, allegedly made at a town hall. Dkt. No. 51, p. 9 (Pg. ID 546). Watrobski testified that Sandschafer discriminated against older workers by saying, "[b]oy, you know, they mistook me for an Intern. That's how young I look. You know, we need a young looking and a young - young ideas in this corporation." Dkt. No. 52-2, p. 10 (Pg. ID 604).

2. Circumstantial Evidence

On the other hand, to establish circumstantial evidence of discrimination, Watrobski maintains that FCA effectively adopted a policy to remove older workers. *See, e.g.,* Dkt. No. 51, p. 9 (Pg. ID 546). In support he references several employees that FCA allegedly fired and replaced with younger workers. *See id.*

Additionally, he contends that his performance evaluations, including discipline resulting therefrom, do not accurately portray his performance. Dkt. No. 66, pp. 1–2 (Pg. ID 794–95). For example, he cites testimony from Robert Ford, a senior FCA officer who was several levels of seniority removed from Plaintiff. *Id.*;

3

*see also* Dkt. No. 66-1, pp. 7–8 (Pg. ID 807–08). Ford testified that Plaintiff was a "problem-solver." Dkt. No. 66-1, pp. 7–8 (Pg. ID 807–08).

Plaintiff also argues that his performance was satisfactory during periods where FCA alleges the opposite. Dkt. No. 66, p. 3 (Pg. ID 796). According to the Plaintiff, his assertions are bolstered by a pay raise he received in early 2014, which was based on his 2013 performance review. *Id.* A review that FCA contends showed his performance was unsatisfactory. *See* Dkt. No. 46-4.

The record details Plaintiff's performance at FCA from 2013 to 2015. Andrew Gross was Plaintiff's direct supervisor, and Gross completed all of Plaintiff's performance evaluations during this time frame. *See id.* On Plaintiff's 2013 annual performance review, he received a "needs improvement" score of 4. *Id.* at p. 4 (Pg. ID 473). Because of this score, Gross placed Watrobski on a performance improvement plan ("PIP"). *Id.* The PIP lasted from February 2014 to June 2014. Dkt. No. 46-5, p. 4 (Pg. ID 478). Watrobski successfully completed the plan, as he significantly improved his leadership skills, namely through coaching other team members. *Id.* at p. 6 (Pg. ID 480).

On his 2014 annual review, Plaintiff received another medium score. Dkt. No. 46-6, p. 3 (Pg. ID 487). There, Gross determined that Watrobki's "resistance to change and continuing reliance on the status quo have resulted in a Leading Change rating of Low. [Plaintiff] should take the recent success he had with improving his

4

Leading People behaviors and make a similar effort in 2015 to Improve his Leading Change behaviors." *Id.*

Plaintiff's 2014 performance review prompted Gross to force Watrobski on a second PIP, this time from March 5, 2015 to June 3, 2015. Dkt. No. 46-7, p. 2 (Pg. ID 491). Gross was concerned with Plaintiff's performance at all three stages of this PIP. *Id.* at pp. 2–4 (Pg. ID 491–93). At the beginning, Gross determined that Plaintiff was not completing activities required by the PIP, including verifying the successful completion of projects. *Id.* Midway through the PIP, Gross concluded that "[Plaintiff] has missed two deadlines for this PIP," and that "[Plaintiff] is in real danger of not having a successful conclusion to this PIP." *Id.* at p. 4 (Pg. ID 493). Finally, Gross found that Watrobski did not satisfy the PIP. *Id.* at p. 5 (Pg. ID 494). He noted that, among other things, Watrobski had continuously failed to carefully read and respond to communications with business partners and team members, which led to unnecessary confusion. *Id.*

Gross recommended to FCA that Watrobski be fired because of this failed PIP and Watrobski's annual performance reviews. Dkt. No. 52-4, p. 4 (Pg. ID 630). FCA then fired Watrobski effective July 1, 2015. *Id.*

### 3. Plaintiff's Replacements

Plaintiff contends that he was replaced by a third-party contractor, Jawahare Babu Hare Dos ("Babu"). Dkt. No. 51, p. 6 (Pg. ID 543). Babu was in his thirties when the Plaintiff left FCA. Dkt. No. 52-3, pp. 3, 11 (Pg. ID 625).

Watrobski worked with Babu from 2009 until Watrobski's termination six years later. Dkt. No. 46-2, p. 22 (Pg. ID 418). Plaintiff also admits that he and Babu had overlapping duties. *Id.* For instance, Plaintiff explained that Babu "was doing what I told him to do. He was doing tasks that I would have done, but I handed it off to him so I could -- as Andy [Gross] wanted me to do." *Id.* Babu was also not reassigned after Plaintiff's termination. *Id.*

Additionally, James Olzem testified that, along with Babu, he managed some of Plaintiff's responsibilities. Dkt. No. 52-3, p. 10 (Pg. ID 624). Plaintiff acknowledged that Olzem joined Plaintiff's team in 2013 to "perform some of [his] tasks." Dkt. No. 46-2, p. 19 (Pg. ID 415). Gross also stated that Olzem handled some of Plaintiff's old duties. Dkt. No. 52-4, p. 8 (Pg. ID 634). Olzem is only six years younger than Watrobski; thus, he was fifty-six years old when Watrobski left FCA. Dkt. No. 52-3, pp. 3, 11 (Pg. ID 625).

### III. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[a] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

6

material fact and the movant is entitled to judgment as a matter of law." A court must view the facts and draw reasonable inferences from the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

**IV. Discussion**

The Defendant argues it is entitled to summary judgment on Plaintiff's ADEA claim. FCA contends that the Plaintiff cannot as a matter of law (1) make a prima facie case of age discrimination, or (2) show that FCA's reason for terminating his employment was pretext. The Court agrees on both counts. Therefore, Plaintiff's ADEA claim will not survive the summary judgment motion.

A. ADEA Claim

The ADEA prohibits employers from discriminating based on age. 29 U.S.C. § 623. "[A] plaintiff who alleges employment discrimination under the ADEA may bring a claim using either direct or circumstantial evidence." *Tennial v. United*

*Parcel Serv., Inc.*, 840 F.3d 292, 305 (6th Cir. 2016) (citing *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)).

Plaintiff's ADEA claim relies on both direct and circumstantial evidence, and " '[t]he direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both.' " *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014) (alteration in original) (quoting *Kline v. TVA*, 128 F.3d 337, 348–49 (6th Cir. 1997); citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). Direct and circumstantial evidence claims are subject to different standards, however. *See Tennial*, 840 F.3d at 305.

Plaintiff's claim fails as a matter of law under either category of evidence.

1.  Direct Evidence

First, proof of direct evidence is contingent on "whether evidence, if believed, requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick*, 766 F.3d at 530. Direct evidence " 'proves the existence of a fact without requiring any inferences.' " *Id.* (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004); citing *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). The evidence, i.e. the allegedly unlawful statements or actions, "must come from decisionmakers to constitute evidence of discrimination." *Geiger*, 579 F.3d at 620–21 (citing *Rowan*, 360 F.3d at 550). " 'Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional

8

process itself," the Sixth Circuit held, "[cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus.' " *Id.* at 621 (alteration in original) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)).

Plaintiff argues that statements by FCA CEO Sergio Marchionne and former FCA Chief Information Officer Scott Sandschafer constitute direct evidence of discrimination. The Court is unpersuaded. These individuals were not "decisionmakers" as to Plaintiff's termination; they were not involved. Rather, Andrew Gross was responsible for Plaintiff's firing, and thus, was the "decisionmaker."

Sixth Circuit precedent compels the Court to reject Watrobski's direct evidence argument. For example, a plaintiff failed to offer direct evidence of discrimination through his supervisor's statement that because a company executive "wanted younger people," the plaintiff would not receive a promotion. *Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 589–90 (6th Cir. 2003). This statement was not direct evidence because "[the supervisor] had no involvement in the decision not to promote [the plaintiff], and [the supervisor] did not reveal the basis for his alleged insight into [the executive's] thought processes." *Id.* at 590.

On the other hand, and more recently, the Sixth Circuit accepted a plaintiff's argument that a school superintendent's statements about seeking to hire "someone younger" were made by a decisionmaker. *Scheick*, 766 F.3d at 531. The court

9

concluded that "because there was evidence that both [the superintendent] and the Board [of Education] were involved in making the decision, it is immaterial whether [the superintendent] was acting at the behest of the Board, or on his own with input from the Board." *Id.* (citing *Brown*, 338 F.3d at 589–90).

Watrobski's situation is like *Brown* and distinguishable from *Scheick*. Gross testified that it was his decision to fire the Plaintiff, and no evidence in the record contradicts this assertion. Dkt. No. 52-4, p. 17 (Pg. ID 643). Indeed, Gross advised FCA's Human Resources Department that FCA should fire Watrobski, and then FCA terminated Plaintiff's employment. *Id.* at p. 4 (Pg. ID 630).

Gross's decisionmaking role is further evidenced by his completion of all of Plaintiff's performance reviews during the relevant period, including any PIPs. *See* Dkt. Nos. 46-4, 46-5, 46-6, 46-7. Plaintiff presents no evidence to the contrary, in particular evidence that Marchionne or Sandschafer evaluated Plaintiff's performance, or made any decisions regarding his employment.

As Watrobski mistakenly relies on statements by individuals with no role in his termination, his ADEA claim through direct evidence of discrimination is insufficient as a matter of law.

    2.    Circumstantial Evidence

Plaintiff also presents an age discrimination claim based on circumstantial evidence. This claim, too, will fail.

*McDonnel Douglas* provides the framework for ADEA claims based on circumstantial evidence. *See Tennial*, 840 F.3d at 305 (citing *Geiger*, 579 F.3d at 622). First, plaintiffs must make a prima facie case of age discrimination, and this mandate "is not intended to be an onerous one." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)). Indeed, the Sixth Circuit has provided that:

> Typically, to prove a prima facie case of age discrimination, an employee must demonstrate that '(1) he or she was a member of a protected age class (i.e., at least forty years old); (2) he or she suffered an adverse employment action; (3) he or she was qualified for the job or promotion; and (4) the employer gave the job to a younger employee.'

*Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014) (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 529 (6th Cir. 2007)).

Where a plaintiff makes this showing, "the burden shifts to the defendant employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action." *Loyd*, 766 F.3d at 590 (citing *Geiger*, 579 F.3d at 626). Next, a plaintiff must "demonstrat[e] that the proffered reason was in fact a pretext designed to conceal unlawful discrimination." *Id.* Pretext includes only evidence showing "that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was

insufficient to warrant the adverse employment action." *Id.* (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)).

The parties contest the satisfaction of element four, i.e. whether Watrobski was replaced by someone outside of his protected class. "An employee is replaced only where 'another employee is hired or reassigned to perform the plaintiff's duties.'" *Webb v. ServiceMaster BSC LLC*, 438 F. App'x 451, 454 (6th Cir. 2011) (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)). "[A]n employee's assumption of a terminated co-worker's job duties," the Sixth Circuit wrote, "does not constitute replacement for purposes of an ADEA claim." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283–84 (6th Cir. 2012) (citing *Grosjean*, 349 F.3d at 336). Relatedly, "'[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement.'" *Webb*, 438 F. App'x at 454 (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992)).

All agree that FCA did not hire an employee to replace Watrobski. Instead, Watrobski maintains that he was replaced by a much younger third-party contractor, Jawahare Babu Hare Dos. Dkt. No. 46-2, p. 22 (Pg. ID 418); Dkt. No. 51, p. 22 (Pg. ID 559); *see also* Dkt. No. 52-3, pp. 3, 11 (Pg. ID 625). Plaintiff's claim fails for two reasons.

First, even assuming that Babu was an FCA employee, Plaintiff's claim lacks merit because Babu was not reassigned in assuming Plaintiff's duties. Watrobski

acknowledges that he worked with Babu since 2009, six years prior to his termination, and he admits that they had overlapping responsibilities. Dkt. No. 46-2, p. 22 (Pg. ID 418). Plaintiff testified that while working with Babu, Babu "was doing what I told him to do. He was doing tasks that I would have done, but I handed it off to him so I could -- as Andy [Gross] wanted me to do." *Id.* Babu may have assumed Plaintiff's duties, but he was not reassigned. Indeed, he had been completing these tasks all along. *Id.* Accordingly, no reasonable jury could conclude that Watrobski was replaced by a younger person in contravention of the ADEA.

Plaintiff cannot satisfy this element for another reason. Plaintiff's testimony indicates that FCA employee James Olzem similarly performed some of his tasks, both before and after his departure from FCA. *Id.* at p. 19 (Pg. ID 415). And as Watrobski is only six years older than Olzem, who was fifty-six when Plaintiff left FCA, Plaintiff was not replaced by someone outside of his protected class. Dkt. No. 52-3, pp. 3, 11 (Pg. ID 625); *see Lewis v. City of Detroit*, 702 F. App'x 274, 280 (6th Cir. 2017) (observing that "the [ADEA] protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not only by a person outside the protected class, but replacement by a significantly younger person.").

13

Olzem's fulfillment of Plaintiff's duties further suggests that Watrobski's job was spread among several employees. Watrobski testified that Olzem joined his team in 2013 to "perform some of [his] tasks." Dkt. No. 46-2, p. 19 (Pg. ID 415). Likewise, Olzem stated that prior to Watrobski's departure, he, Watrobski and Babu had shared responsibilities, with Gross supervising their work. Dkt. No. 52-3, p. 10 (Pg. ID 624). Olzem confirmed that following Plaintiff's departure "the work that was being performed by three people [was] now being done by two people[,]" and explained that "[he] was busier after [Watrobski] left[.]" *Id.* Gross also said that Olzem managed some of Plaintiff's old duties. Dkt. No. 52-4, p. 8 (Pg. ID 634).

Thus, after Plaintiff's departure from FCA, his duties were assumed by a younger employee who was not reassigned (Babu), another employee in his protected class (Olzem), or several employees (Babu and Olzem). There is no genuine dispute, then, about whether Watrobski can make a prima facie case of age discrimination.

### 3. Legitimate, Nondiscriminatory Justification

FCA fired Watrobski because of "[his] failure to successfully complete the PIP and improve his performance[.]" Dkt. No. 69, p. 5 (Pg. ID 841). The Court finds that this is a legitimate, nondiscriminatory justification. Summarizing his decision to fire Watrobski, Gross said:

> But at the time the decision was made, I made the decision that there was no improvement. I had stopped my follow up activities to see what

14

> would happen. He didn't improve. He failed certain aspects. He missed certain dates, and I saw no reason to believe it was going to be any better at the end of 2015.

Dkt. No. 52-4, p. 17 (Pg. ID 643).

Watrobski's performance reviews support Gross's testimony. During his final two years at FCA, Watrobski was subject to two separate PIPs. The first began in February 2014 after Watrobski received a "needs improvement" score of 4 in his 2013 annual performance review. *See* Dkt. No. 46-5 p. 4 (Pg. ID 478). Watrobski successfully completed the plan, which ended in June 2014. *Id.* at pp. 4, 9 (Pg. ID 478, 483). The plan aimed to improve Watrobski's training and coaching of a new team member (Olzem), make him more accountable, and better his written communications with business partners. *Id.* at pp. 2–3 (Pg. ID 476–77).

Yet Gross found Plaintiff's performance deficient shortly after the completion of the first PIP, and in response, Gross initiated a second PIP. Dkt. No. 46-7, p. 2 (Pg. ID 491). This PIP lasted from March 2015 to June 2015. *Id.* Here, the performance issues involved failing to verify the successful completion of tasks and not making decisions in a timely manner. *Id.*

At every review period in the second PIP, Gross detailed issues with Watrobski's performance. First, at the thirty-day deadline, Gross determined that Watrobski was not in compliance. *Id.* at pp. 3–4 (Pg. ID 492–93). Specifically, Watrobski had not logged follow-up processes to ensure the completion of projects,

15

and had not discussed the log with Gross during weekly performance meetings. *Id.* at pp. 2–4 (Pg. ID 491–93).

After sixty-days, Gross observed that "Jerry has missed two deadlines for this PIP," and that "[he] is in real danger of not having a successful conclusion to this PIP." *Id.* at p. 4 (Pg. ID 493). In the last segment of the PIP, after ninety-days, Gross decided that Watrobski was not meeting expectations because he (1) was failing to confirm that projects were successfully completed; (2) did not thoroughly read instructions from others, leading to miscommunications and other problems; and (3) had failed to "consistently proofread his communications," which had confused the recipients of his messages. *Id.* at p. 5 (Pg. ID 494).

In light of the above evidence, the Defendant has offered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

### 4. Pretext

According to Watrobski, FCA's justification meets all three categories of pretext: it was not grounded in fact, it was motivated by other considerations, and it did not justify his termination. *See Loyd*, 766 F.3d at 590 (citing *Wexler*, 317 F.3d at 576). None of his arguments are persuasive, and none can overcome the "honest-belief rule."

"The honest-belief rule provides that an employer is entitled to 'summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish,

16

trivial, or baseless.' " *Id.* at 590–91 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009)). Courts must ask " 'whether the employer made a reasonably informed and considered decision before taking an adverse employment action.' " *Id.* at 591 (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). That is, "[a]n employer's pre-termination investigation need not be perfect in order to pass muster under the rule." *Id.* (citing *Seeger*, 681 F.3d at 285). Plaintiffs can only resist the application of the honest-belief rule if they present evidence regarding " 'an error on the part of the employer that is too obvious to be unintentional.' " *Id.* (citing *Seeger*, 681 F.3d at 286).

Watrobski has not presented evidence that his termination was the result of a mistake "too obvious to be unintentional." First, to establish that FCA schemed to remove older workers, he makes threadbare allegations regarding the firing or demotion of other protected employees. This argument is belied by his situation. The record reveals ample evidence of continued and substantive concerns about his performance.

In addition, he unconvincingly argues that Gross's findings—generally consistent over a three year period of performance—are obvious error. To support this assertion he cites select portions of testimony from FCA employees with whom he did not intimately work, and thus, these employees have only vague knowledge of his performance. *See* Dkt. No. 66, p. 2 (Pg. ID 795). For instance, to demonstrate

17

that he was a highly regarded employee, he cites testimony from Robert Ford, a senior officer who reports directly to the Chief Information Officer. Dkt. No. 66, p. 2 (Pg. ID 795); *see also* Dkt. No. 66-1, pp. 7–8 (Pg. ID 807–08). In particular, Watrobski highlights that Ford called him a "problem-solver." Dkt. No. 66-1, pp. 7–8 (Pg. ID 807–08).

Yet Ford was never Plaintiff's direct supervisor (indeed, he was three levels removed in seniority from Watrobski), and had not worked with Watrobski in years prior to his termination. *Id.* at pp. 16–17 (Pg. ID 816–17). What is more, Ford was generally aware of issues with Watrobski's performance in 2014. *Id.* Ford stated that he knew Watrobski was reprimanded, but did not know the details of the discipline. *Id.* Therefore, given proper context, Ford's "problem-solver" comment hardly suggests that FCA committed obvious error.

Third, and finally, Watrobski maintains that because he received a pay raise in 2014, his performance must have been adequate. This allegation, standing alone, is not enough to indicate that FCA committed error too obvious to be unintentional. Indeed, Ford explained that there was sometimes a delay between good performance and receipt of a raise. *Id.* at p. 18 (Pg. ID 818). According to Ford, Watrobski could have earned the pay raise, began performing below expectations again, and later received the raise which corresponded to the earlier period of satisfactory performance. *Id.*

18

Because the evidence does not illustrate that Watrobski's firing was "too obvious to be unintentional," reasonable minds would all agree that Watrobski cannot show pretext.

## V. Conclusion

The Defendant moved for summary judgment on Plaintiff's ADEA claim. The Defendant asserts that the Plaintiff cannot prove a prima facie claim of discrimination, pretext, or both as a matter of law. The Court agrees. Therefore, the Court will GRANT the Defendant's Motion for Summary Judgment [46].

IT IS SO ORDERED.

Dated: February 21, 2018

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 21, 2018, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk